UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ADRIAN CARLTON, et al.,

        Plaintiffs,

v.	Case No. 2:04-cv-001
    HON. R. ALLAN EDGAR

M. JOHNSON, et al.,

        Defendants.
_____/

### REPORT AND RECOMMENDATION

Plaintiffs Anthony Williams and Adrian Carlton, inmates incarcerated at the Baraga Maximum Correctional Facility (AMF), filed a pro se complaint against defendants Corrections Officer M. Johnson, Corrections Officer P. Turner, Corrections Officer R. Ekdahl, Resident Unit Manager W. Jondreau, and Hearing Investigator Stephen Raymond, all of whom are employed by the MDOC at AMF. Plaintiff Williams and defendant Raymond have been dismissed from this action. The remaining claims are against defendants Turner, Ekdahl, and Jondreau.

Plaintiff Carlton alleges that on May 17, 2003, he witnessed defendant Ekdahl and Corrections Officer Ninko assault prisoner Jones. On May 29, 2003, defendants Ekdahl and Turner took plaintiff Carlton to defendant Jondreau's office. While in the office, defendant Jondreau questioned plaintiff Carlton about the assault on Jones. When plaintiff Carlton stated what he had observed, defendant Turner intervened, stating "No, you didn't see anything, right?" Plaintiff Carlton insisted that he had, and defendant Turner struck the back of plaintiff Carlton's head, which almost caused plaintiff Carlton to fall forward into defendant Jondreau's desk. Plaintiff Carlton had his hands cuffed behind his back during this time. Defendants Ekdahl and Jondreau looked on and

did nothing. Plaintiff Carlton again attempted to state that he had witnessed the assault, and defendant Turner struck him a second time. At this point, defendant Jondreau intervened and suggested that plaintiff Carlton make a statement regarding the prisoner Jones incident favorable to the corrections officers. Plaintiff Carlton agreed and executed a false affidavit, back-dated to May 17, 2003. Plaintiff Carlton states that he subsequently made an additional statement on behalf of defendants because prisoner Jones had requested that plaintiff Carlton be a witness for his misconduct. This statement was turned over to defendant Raymond, who allegedly released a copy to prisoner Jones. This action revealed plaintiff Carlton as a confidential informant or "snitch," and subjected plaintiff Carlton to a serious risk of harm. Sometime later, prisoner Jones contacted plaintiff Carlton and told him that his family would be contacting him. On June 6, 2003, plaintiff Carlton received a letter from prisoner Jones' sister, stating that she had plaintiff Carlton's statement against her brother and offered to pay if plaintiff Carlton withdrew the statement. The letter also threatened harm to plaintiff Carlton if he did not withdraw the statement. Plaintiff Carlton indicates that the letter repeated confidential information contained in his statement that was known only to himself and defendant Raymond. Plaintiff Carlton states that he forwarded the letter to Prison Legal Services of Michigan (PLSM), seeking advice on how to protect himself.

Plaintiff Carlton states that he set two cell fires on July 4, 2003 and July 5, 2003, in an attempt to gain the attention of prison authorities. On July 9, 2003, Plaintiff Carlton was interviewed by Assistant Deputy Warden (ADW) William E. Luetzow about the cell fires. Defendant Jondreau was present during this interview. Plaintiff Carlton told Luetzow about the letter from prisoner Jones' sister and Luetzow told him to write to PLSM and get a copy of the letter. Luetzow also told plaintiff Carlton to have a copy sent to him. Plaintiff Carlton was taken to the typing room by Corrections Officer Anderson on July 11, 2003. Plaintiff Carlton was not allowed

to seal the letter, which was read by defendant Jondreau. On July 16, 2003, Luetzow came to see plaintiff Carlton and told him that he had received a copy of plaintiff Carlton's letter to PLSM. Plaintiff Carlton then told Luetzow about the incident on May 29, 2003, in which he was assaulted and threatened by defendants Turner, Ekdahl and Jondreau. When Luetzow asked plaintiff Carlton why he had not disclosed this earlier, plaintiff Carlton explained that he did not want to say anything while defendant Jondreau was present. Luetzow then had plaintiff Carlton transferred to another segregation unit.

On July 18, 2003, plaintiff Carlton filed a grievance regarding the fact that prisoner Jones was told of plaintiff Carlton's confidential statement. Plaintiff Carlton was interviewed by Michigan State Police on July 21, 2003, during which he told them of the incident on May 29, 2003. On July 21, 2003, plaintiff Carlton was interviewed by Inspector Burnnet regarding his July 18, 2003, grievance. In addition, plaintiff Carlton gave Inspector Burnnet a letter from prisoner DeAndre Johnson #233937, dated July 18, 2003, which stated that staff had told him that plaintiff Carlton made a confidential statement against him on behalf of Corrections Officer A. Hill in relation to a false misconduct of assault and battery. Plaintiff Carlton states that he had made a statement on behalf of Officer Hill, which was turned over to defendant Raymond. Defendant Raymond apparently shared this information with prisoner Johnson, which placed plaintiff Carlton at risk from other prisoners. Plaintiff Carlton asserts that he filed a grievance and that in the response, which he received on July 30, 2003, Inspector Burnnet stated that plaintiff Carlton was not used as a confidential informant and that until he got the letter back from PLSM, nothing could be done for plaintiff Carlton. Plaintiff Carlton complains that Burnnet deliberately misunderstood his grievance, and avoided addressing the real issue. On August 13, 2003, plaintiff Carlton sent letters to State Court Judge James R. Giddings, Prisoner Affairs, and Internal Affairs, stating that he feared

for his safety, as well as the safety of his nephew, plaintiff Williams. On August 25, 2003, plaintiff Carlton sent a letter to prosecuting attorney Joseph P. O'Leary, which was forwarded to the Michigan State Police. The Michigan State Police contacted plaintiff Carlton on September 2, 2003, and forwarded a copy of plaintiff's complaint to Internal Affairs Manager Stephen H. Marschke. Plaintiff Carlton's grievance regarding being coerced into making a statement and the alleged leaking of information to prisoner Jones was denied at step III.

The court granted defendants summary judgment dismissing plaintiff's complaint. The Sixth Circuit reversed the judgment, in part, finding that plaintiff's Eighth Amendment and First Amendment claims could not be dismissed. The Sixth Circuit explained:

> The critical question in this case is what happened: in other words, are Carlton's allegations true or false? If what Carlton says is true, he has stated a cognizable Eighth Amendment claim. If not, the claim evaporates. Given that the claim rises or falls based on a credibility assessment of what happened during this confrontation and given the few facts and arguments before us, the case should go to a factfinder to determine who is telling the truth.

Sixth Circuit opinion at 7, docket #117.

Plaintiff now moves for "partial summary judgment." Plaintiff requests judgment on his First, Eighth and Fourteenth Amendment claims. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R.

Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Nothing has changed since the Sixth Circuit ruled that a question of fact exists on plaintiff's Eighth and First Amendment claims. Plaintiff has not provided any additional evidence that could show that his claims lack a genuine issue of fact entitling judgment in his favor. Clearly, a question of fact exists. Trial is scheduled in this matter for October 10, 2006. This matter will be resolved after completion of a trial on the merits. Plaintiff has not satisfied his burden that he is entitled to summary judgment prior to trial.

Plaintiff has filed motions for equitable relief claiming that he should have a Special Problem Offender Notice placed in his file (docket #131), and that he should be transferred to another unit (docket ## 147 and 159). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights. A question of fact exists whether plaintiff's rights were violated. Plaintiff has not come close to showing a substantial likelihood of success on the merits of his claims. Moreover, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

Because plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that plaintiff's motions be denied.

Accordingly, it is recommended that plaintiff's motion for partial summary judgment (docket #124) and motions for equitable relief (docket ## 131, 147 and 159) be DENIED.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 31, 2006